# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TENNESSEE

In re

KEITH RYAN HUMBARD

    Debtor

Case No. 05-31363

KEITH RYAN HUMBARD

    Plaintiff and
    Counter-Defendant

v.

Adv. Proc. No. 05-3046

CAROLEE HUMBARD

    Defendant and
    Counter-Plaintiff

## **M E M O R A N D U M**

**APPEARANCES:**   HODGES, DOUGHTY & CARSON, PLLC
    Keith L. Edmiston, Esq.
    Post Office Box 869
    Knoxville, Tennessee 37901-0869
    Attorneys for Plaintiff

    L. KIRK WYSS, ESQ.
    Post Office Box 1778
    Morristown, Tennessee 37816-1778
    Attorney for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

On March 18, 2005, the Plaintiff/Debtor, Keith Ryan Humbard, filed the Complaint initiating this adversary proceeding, seeking a determination that, by virtue of 11 U.S.C.A. § 523(a)(5) (West 2004), a debt owed to the Defendant arising out of the parties' divorce is dischargeable. The Defendant, Carolee Humbard Hale, filed her Answer, along with a Counter-Complaint Objecting to Discharge on April 13, 2005, denying that the debts are dischargeable pursuant to either 11 U.S.C.A. § 523(a)(5) or (15) (West 2004) and asking the court to deny the Plaintiff's discharge pursuant to 11 U.S.C.A. § 727(a)(2), (3), (4), (5), and/or (7) (West 2004).[1]

The trial of this adversary proceeding was held on October 17, 2005. The record before the court consists of eight exhibits introduced at trial, along with the testimony of the parties.[2]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(K) (West 1993).

**I**

The parties were divorced pursuant to a Final Decree of Divorce entered in the Chancery Court for Jefferson County, Tennessee, on December 16, 2004, which

---

[1] Pursuant to the Pretrial Order entered on June 6, 2005, the issues to be decided by the court were identified as arising under 11 U.S.C.A. § 727(a)(2), (5), and/or (7) and 11 U.S.C.A. § 523(a)(5) and (15). At trial, the parties advised the court that § 727(a)(3) was also at issue, but that § 727(a)(7) and § 523(a)(5) were not at issue and need not be considered. The Pretrial Order is deemed amended accordingly.

[2] The court will refer to the Debtor throughout the Memorandum as the Plaintiff and will refer to Carolee Humbard as the Defendant, notwithstanding their roles as Counter-Defendant and Counter-Plaintiff, respectively.

incorporated into its terms a Marital Dissolution Agreement executed by the parties also on December 16, 2004. *See* TRIAL EX. 1. As material to this adversary proceeding, the Marital Dissolution Agreement provides:

> 5. The Defendant agrees to award the Plaintiff 30% of the husbands recovery, less the Plaintiff's attorney fee in the case styled "Keith Humbard v. Nashua & Travelers Insurance Co." as now is pending in Jefferson County. Should the Defendant be unsuccessful in said case, then the Defendant agrees to award the Plaintiff ten thousand ($10,000.00) dollars to be paid within six months after a determination of the case styled "Keith Humbard v. Nashua & Travelers Insurance Co.".

TRIAL EX. 1.

On January 31, 2005, the Circuit Court for Jefferson County, Tennessee, entered an Agreed Order Approving Workers' Compensation Settlement, awarding the Plaintiff $62,500.00 in his worker's compensation lawsuit, plus $980.25 in temporary total disability benefits, indemnification for the $114,058.60 in medical expenses incurred as a result of his injury and treatment, $712.95 for unpaid mileage, $1,869.57 for discretionary costs to his attorneys, 20% attorneys' fees, or $12,500.00, and court costs. TRIAL EX. 2. After payment of the attorneys' fees, the Plaintiff received $50,000.00 in net proceeds (Settlement Proceeds). Accordingly, under the terms of the Marital Dissolution Agreement, the Plaintiff was to remit $15,000.00 to the Defendant (Marital Obligation).

The Plaintiff filed the Voluntary Petition commencing his case under Chapter 7 of the Bankruptcy Code on March 10, 2005. In his statements and schedules, the Plaintiff listed the Defendant as his only unsecured nonpriority creditor, holding a claim in the amount of $15,000.00 for the Marital Obligation. Approximately one week later, he commenced this

3

adversary proceeding, arguing that the Marital Obligation owed to the Defendant under the Marital Dissolution Agreement is not in the nature of support and is therefore dischargeable. In her Answer, the Defendant argued that even if the Marital Obligation is dischargeable under § 523(a)(5), it is nevertheless nondischargeable under § 523(a)(15) since the Plaintiff has the ability to pay, although he has chosen not to do so, and because his benefit of discharge does not outweigh the detriment to her if the Marital Obligation is discharged. Additionally, the Defendant avers that the Plaintiff's conduct both before and after bankruptcy requires that his discharge be denied.

## II

Although the basis of the Plaintiff's Complaint is the dischargeability of the Marital Obligation, that issue is secondary to the objection to the Plaintiff's discharge raised in the Defendant's Counter-Complaint.

Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C.A. § 727, unless one of ten express limitations exists. Section 727 provides, in material part:

(a)  The court shall grant the debtor a discharge, unless—

> . . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> . . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C.A. § 727(a). These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown (In re Brown)*, 56 B.R. 63, 66 (Bankr. D.N.H. 1985)).

**A**

Section 727(a) is liberally construed in favor of the debtor, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994); FED. R. BANKR. P. 4005. The court finds that the Defendant has met her burden of proof that the Plaintiff should be denied a discharge pursuant to § 727(a)(3) and (5). Under § 727(a)(3), a discharge will be denied for failing

to produce documentation "with enough information to ascertain [a debtor's] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (citations omitted)). This disclosure provides the trustee and creditors with sufficient information concerning a debtor's financial history and current financial affairs, because "[c]reditors are not required to risk having the debtor withhold or conceal assets 'under the cover of a chaotic or incomplete set of books or records.'" *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (quoting *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir. 1990)).

Accordingly, the Defendant is not required to investigate and acquire the Plaintiff's records, as it is his responsibility to provide sufficient information, *see Wazeter*, 209 B.R. at 227-28 (citing *Juzwiak*, 89 F.3d at 428). She does, however, bear the initial burden of proof under § 727(a)(3) that the Plaintiff "has failed to maintain adequate books and records and that such failure renders it impossible to discern [his] true financial condition[.]" *Christy v. Kowalski (In re Kowalski)*, 316 B.R. 596, 601 (Bankr. E.D.N.Y. 2004). If the Defendant meets her burden of proving that the Plaintiff's records are inadequate, the burden shifts to the Plaintiff to prove that his failure to maintain records was justified under the specific circumstances of his case. *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (B.A.P. 6th Cir. 1999).

The adequacy of records is determined on a case by case basis, *Strbac*, 235 B.R. at 882, and judges have broad discretion to deny discharge based on inadequately kept books and records. *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986).

> The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'"

*Alten*, 958 F.2d at 1230 (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979) (citations omitted)). Instead, the Plaintiff's records should be measured "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *Wazeter*, 209 B.R. at 227 (quoting *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997)). Examples of inadequate disclosures include the failure to produce checking account statements, tax returns, household bills and/or credit card records, loan documentation, pay records, and real estate closing statements. *See Ochs v. Nemes (In re Nemes)*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005) (credit card records and bank statements); *Strbac*, 235 B.R. at 884 (tax returns, paycheck stubs, and records with respect to the debtor's subcontractor work); *Wazeter*, 209 B.R. at 228 (cancelled checks for two years, loan records, closing records for real estate transactions, and household bills). Intent is not an element under § 727(a)(3). *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002).

The Defendant also objects to the Plaintiff's discharge under § 727(a)(5), alleging that he has not adequately explained what happened to a large portion of the Settlement Proceeds in the thirty-nine days between receiving it and filing for bankruptcy. The court has "broad power [under § 727(a)(5)] to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996). The initial burden is on the Defendant to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Plaintiff owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Plaintiff no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question. *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999). She is not, however, required to prove that the Plaintiff acted knowingly or fraudulently, as "noticeably lacking from § 727(a)(5) is any element of wrongful intent or, for that matter, any affirmative defenses -- § 727(a)(5) simply imposes strict liability." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).[3]

The burden then shifts to the Plaintiff to provide a satisfactory explanation of the whereabouts of the assets. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984). "[A] satisfactory explanation 'must consist of more than . . . vague, indefinite, and

---

[3] "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to 'relieve[] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004) (quoting *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson),* 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)).

uncorroborated' assertions by the debtor," *D'Agnese*, 86 F.3d at 734 (quoting *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966)), and it must be reasonable and credible, such that the court is convinced that the debtor is acting in good faith. *Fed. Deposit Ins. Corp. v. Hendren (In re Hendren)*, 51 B.R. 781, 788 (Bankr. E.D. Tenn. 1985). Furthermore, the explanation must be supported by "at least some documentation . . . [that is] sufficient to 'eliminate the need for the Court to speculate as to what happened to all the assets.'" *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 364-65 (Bankr. N.D. Ill. 2002) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 956 (Bankr. N.D. Ill. 1995)); *see also NAFCO Fed. Credit Union v. Lawson (In re Lawson)*, 308 B.R. 417, 426 (Bankr. D. Neb. 2004) ("The explanation should be sufficient so the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation.").

With respect to each of these subsections, the Defendant argues that the Plaintiff has not adequately explained how he spent, from January 31, 2005, to March 10, 2005, between $18,000.00 and $20,000.00 of the Settlement Proceeds, nor has he maintained adequate documentation to account for these funds. In his defense, the Plaintiff argues that he did not keep all of his receipts, only the ones for major purchases, which is consistent with how other consumer debtors maintain records. Further, the Plaintiff argues that he has disclosed all of the requested information that he has available.

At the request of his Chapter 7 Trustee, the Plaintiff prepared and tendered the Expenditures of Worker's Compensation Settlement Funds (Expenditures List) showing the following expenditures with respect to the $50,000.00 received on January 31, 2005: (1) $8,731.00 for roof replacement; (2) $1,600.00 to catch up on house payments; (3) $700.00 to catch up on truck payments; (4) $530.00 to his son's dentist; (5) $4,000.00 for furniture, stating the Defendant took most of the household goods in their divorce; (6) $800.00 for clothing; (7) $400.00 for plumbing; (8) one-half of $725.96 for overdrafts and bank charges; and (9) various medical and dental bills, for which the Plaintiff states that he has requested documentation. TRIAL EX. 3.[4] At trial, the Plaintiff testified that of the $50,000.00 in Settlement Proceeds, $13,000.00 cash remains in his possession.[5]

The sum of the expenses shown on the Expenditures List, as amended through his trial testimony, is $16,781.00, which leaves $20,219.00 of the Settlement Proceeds unaccounted for. However, with the exception of those expenses and notes evidenced on the Expenditures List, the Plaintiff did not offer any real explanation as to where he spent the $20,219.00. He did not provide any documentation to support the values placed on the Expenditures List, and in fact, at trial, the Plaintiff stated that he estimated those amounts because he did not keep receipts. The Plaintiff also testified that his monthly bills exceed

---

[4] Originally, the Defendant argued that the Plaintiff used $2,000.00 from the Settlement Proceeds to purchase an engagement ring for his fiancee; however, at trial, the Plaintiff stated that he used his portion of the parties' 2004 tax refund to purchase the ring. Additionally, at trial, the Plaintiff stated that the overdrafts and bank charges were paid with his tax refund.

[5] Although not introduced into evidence by the parties, the court takes judicial notice of the Debtor's Amended - Schedule B - Personal Property filed on May 2, 2005, whereby the Debtor lists $20,000.00 in "Settlement funds from Workers' Compensation Case" on hand when he filed his petition on March 10, 2005.

his monthly income, so he has spent the remainder of his money to cover those shortages. As proof of this deficiency, the Plaintiff offered into evidence his Schedules I and J filed in his bankruptcy case, evidencing monthly income of $1,726.00 compared to $1,887.00 in expenses. *See* COLL. TRIAL EX. 6. The Plaintiff also testified that he has paid some medical, dental, and vision bills for his two children, of whom he has custody, totaling roughly $1,800.00. He also testified that his children have attention deficit disorder which might require additional expenditures in the future.

According to the Plaintiff's statements and schedules, his gross monthly income is $2,260.00, subject to deductions of $274.00 for payroll and social security taxes, $208,00 for insurance, and $52.00 for retirement, resulting in net monthly income of $1,726.00. COLL. TRIAL EX. 6. His monthly expenses, as scheduled, total $1,887.00 and include the following: (1) a $550.00 house payment, inclusive of property taxes; (2) $100.00 for electricity and gas; (3) $25.00 for water and sewer; (4) $55.00 for cable; (5) $350.00 for food for his family of three; (6) $60.00 for clothing; (7) $60.00 for laundry and dry cleaning; (8) $50.00 for medical and dental expenses; (9) $100.00 for transportation; (10) $175.00 for recreation, clubs, and subscriptions; (11) $45.00 for homeowner's insurance; (12) $128.00 for auto insurance; and (13) a car payment of $129.00. COLL. TRIAL EX. 6. There is no question that the Plaintiff's statements and schedules evidence a deficit of $161.00 per month.

Nevertheless, the Plaintiff offered no other proof, either through his testimony or through concrete documentary evidence, to explain why he has only $13,000.00 rather than

11

$33,219.00. He produced no receipts, additional summaries, or lists, and he offered no real explanation, much less one that sufficiently explained the $20,219.00 difference between the $50,000.00 in Settlement Proceeds received in January 2005, less the remaining $13,000.00 and the $16,781.00 listed on the Expenditures List. Even if the court were to round the Plaintiff's monthly deficit between his income and expenses to $200.00 per month, he would have only used $2,000.00 for January through October 2005. None of the Plaintiff's evidence with respect to why he needs to retain the remaining $13,000.00 from the Settlement Proceeds satisfies the requirement to explain where the remainder of the money was spent.

With respect to the production of his records, the Plaintiff testified that he placed the entire $50,000.00 Settlement Proceeds, in cash, in a lock box, and did not put the Settlement Proceeds into his bank account because the Defendant's sister worked at the bank, and he did not know what access she might have to the funds. For that reason, the Plaintiff argued that production of his checking account statements would not have offered an explanation as to where he spent the Settlement Proceeds. The Plaintiff also testified that he did not keep records and receipts of his expenditures because he did not know that he should. Finally, he stated that he has never kept records of his household bills and expenditures. As rebuttal to this testimony, the Defendant testified that when she was married to the Plaintiff, he never paid cash for anything, but instead, wrote checks or obtained money orders. The Defendant also testified that, during the marriage, the Plaintiff was meticulous about maintaining his records by keeping receipts for everything.

Irrespective of whether the Plaintiff kept records during the parties' marriage, it is entirely unreasonable that he produced absolutely no documentation to evidence his current financial condition. Not even taking into account his lack of documentation concerning how he spent the Settlement Proceeds, the Plaintiff provided no evidence as to his household bills or the medical bills paid on behalf of his children. None of the Plaintiff's checking account records, which would presumably evidence these expenses, were introduced into evidence. Instead, the Plaintiff simply played the role of "unsophisticated consumer debtor," arguing that he did not bring receipts because he did not know he was supposed to. The court does not find this testimony credible, given that one of the grounds upon which the Defendant objects to the Debtor's discharge is related directly to his failure to keep and preserve records.

Based upon the evidence presented, the Defendant proved that, when the Plaintiff filed his bankruptcy case, he no longer had at least one-half of the Settlement Proceeds that he had received only thirty-nine days earlier, thereby shifting to the Plaintiff the burden of explanation as to the disposition thereof. In that respect, the court finds that the Plaintiff has not remotely explained how he spent the unaccounted for $20,219.00 from the Settlement Proceeds, much less done so adequately. The Plaintiff has not provided any evidence, either credible, reasonable, or otherwise, to evidence the whereabouts of these funds or to evidence his own good faith, nor has he provided anything other than vague, uncorroborated assertions without documentary proof. Accordingly, the Plaintiff is not entitled to discharge pursuant to § 727(a)(5). Furthermore, the Plaintiff has not provided

sufficient documentation by which his creditors may ascertain his true financial condition, and as such, the Defendant has met her burden of proof of its inadequacy. On the other hand, the Plaintiff has not met his burden of proving that his failure to produce adequate documentation was justified under the circumstances, and the Debtor will also be denied his discharge pursuant to § 727(a)(3).

**B**

The Defendant also objects to the Plaintiff's discharge under § 727(a)(2)(A), which requires proof of the following elements: (1) the Plaintiff disposed of, transferred, or concealed property within one year of filing his bankruptcy petition, and (2) he possessed a subjective intent to hinder, delay, or defraud creditors through the disposition of his property. *Keeney*, 227 F.3d at 683-84 (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (holding that this subsection "consists of two components: an act . . . and an improper intent."); *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999) (stating that a plaintiff need not prove the debtor intended to hinder, delay, and defraud creditors, since proof of any one satisfies § 727(a)(2)(A)).

Section 727(a)(2)(A) requires proof of actual fraudulent intent, as constructive fraud will not suffice. *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004). Accordingly, in order to prevail under this subsection, the Defendant must prove that the Plaintiff possessed the actual intent to deceive; however, because of the

14

inherent difficulties in proving intent, she may use circumstantial evidence, including evidence of the Plaintiff's conduct to establish his intent. *Buckeye Retirement Co., L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 907 (Bankr. E.D. Tenn. 2003) (citing *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998)). Harm suffered by the Defendant is irrelevant for the purposes of § 727(a)(2)(A). *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003) (citing *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 968 (7th Cir. 1999)).

The court finds that the Defendant has met her burden of proof that the Plaintiff concealed and disposed of property within one year of filing his bankruptcy petition for the sole purpose of hindering and delaying payment of the Marital Obligation owed to the Defendant. First, at trial, the Plaintiff acknowledged that he did not deposit the Settlement Proceeds into a bank account, even though he has both a checking account and a savings account, but instead, that he converted it to cash, kept in a lock-box at his home. To explain this behavior, the Plaintiff testified that he did so because the Defendant's sister worked at SunTrust Bank, and he did not know what she could do to access the money in his accounts, nor did he trust that the Defendant would not gain access to the funds. The Plaintiff also testified that his paychecks have been and still are deposited into his checking account, but he paid for all of the items on the Expenditures List by paying cash. He denied concealing money from the Defendant, but he admitted that he filed bankruptcy solely to discharge the Marital Obligation owed to the Defendant. On the other side, the Defendant testified that her sister no longer works at SunTrust Bank. She also testified that during the five years

that they were married, the Plaintiff never kept cash or paid for items with cash, but instead, wrote checks or obtained money orders for bills.

Notwithstanding the Defendant's testimony in this respect, it is the Plaintiff's testimony that he cashed out the Settlement Proceeds and did not deposit them into his checking or savings accounts because he did not want the Defendant to have access to them that clearly evidences his intent to hinder or delay the Defendant by concealing, and then spending, the Settlement Proceeds.  Accordingly, the Plaintiff's discharge will also be denied by virtue of § 727(a)(2)(A).

The Defendant also objected to the Plaintiff's discharge under § 727(a)(2)(B). Whereas § 727(a)(2)(A) encompasses the Plaintiff's pre-petition acts, his post-petition actions fall within the scope of § 727(a)(2)(B), which requires proof that "(1) the debtor transferred or concealed property, (2) such property constituted property of the estate, (3) the transfer or concealment occurred after the filing of the bankruptcy petition, and (4) the transfer or concealment was made with the intent to defraud the bankruptcy trustee." *Sowers*, 229 B.R. at 156.  Once a creditor establishes its case, the burden shifts to the debtor to provide the court with a convincing explanation for the transfer. *Royer v. Smith (In re Smith)*, 278 B.R. 253, 257 (Bankr. M.D. Ga. 2001).  As with § 727(a)(2)(A), the Defendant may establish the Plaintiff's intent for § 727(a)(2)(B) through evidence of his conduct. *Sowers*, 229 B.R. at 157.  With respect to this subsection, the Defendant argues that the Plaintiff hired a friend to repair his roof for $8,731.00, with work beginning on May 5, 2005.

In order for this subsection to apply, the Settlement Proceeds must have qualified as non-exempt property of the Plaintiff's bankruptcy estate. The court takes judicial notice that the $20,000.00 Settlement Proceeds remaining at the time the Debtor filed his bankruptcy case[6] were claimed exempt pursuant to Tennessee's Workers' Compensation Exemption statute, TENN. CODE ANN. § 50-6-223 (1999). *See In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (stating that exempted property "is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that the debtor] retains sufficient property to obtain a fresh start[.]") (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)). Accordingly, § 727(a)(2)(B) cannot form the basis for denial of the Plaintiff's discharge.

In summary, the court finds that, pursuant to 11 U.S.C.A. § 727(a)(2)(A), (3), and (5), the Plaintiff's discharge shall be denied.[7]

A judgment consistent with this Memorandum will be entered.

FILED: October 26, 2005

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

---

[6] *See supra* n. 5.

[7] Because the Plaintiff's discharge is denied, it is not necessary for the court to address the Defendant's assertion that the Marital Obligation is nondischargeable under § 523(a)(15).